**WORRELL'S LIMITED, doing business as R. D. Worrell Jewelry Co.**

v.

**The UNITED STATES.**

No. 330-60.

United States Court of Claims.

April 4, 1962.

Cynthia Holcomb, Washington, D. C., with whom was Louis F. Oberdorfer, Asst. Atty. Gen., for defendant. Lyle M. Turner and Philip R. Miller, Washington, D. C., were on the briefs.

Philip E. Hoffman, New York City, for plaintiff.

DURFEE, Judge.

This is an action for refund of retail excise taxes paid on certain sales made by plaintiff during 1956–1957.

Plaintiff is a corporation operating a retail jewelry store in Mexico, Missouri. Approximately 6 percent of plaintiff's total sales volume during 1956–1957 represented sales to business concerns which used the merchandise for presentation as awards and premiums to customers and employees. The present proceeding involves the sale of approximately 500 gold and enamel pins by plaintiff to the Mexico Refractories Company which presented the pins as incentive awards to its employees for various periods of longevity in the service of the company. Plaintiff seeks recovery of excise tax payments made in connection with these sales, contending that this type of transaction is not a sale of jewelry at retail such as to be subject to the tax imposed by section 4001 of the Internal Revenue Code, 26 U. S.C. 1958 ed., § 4001. Plaintiff filed a timely claim for refund with the appropriate District Director of Internal Revenue, including the written consent of the purchaser required by section 6416 (a)(1)(D) of the Code to confer standing to seek the refund, which claim was denied.

Section 4001 of the Code provides in pertinent part as follows:

"§ 4001. *Imposition of tax.*

"There is hereby imposed upon the following articles sold at retail a tax equivalent to 10 percent of the price for which so sold:

"All articles commonly or commercially known as jewelry, whether real or imitation."

The sole issue presented in this case is whether this transaction, by a company admittedly engaged principally in the business of selling jewelry at retail, constituted a sale *at retail* within the contemplation of the tax imposed by section 4001. Inasmuch as the phrase "sold at retail" is not defined in the code for the purpose of section 4001, plaintiff contends that it should be construed as it is understood in common parlance, to connote a sale in small quantity, to an ultimate consumer, for the latter's personal gratification. Plaintiff then reasons that

since this particular transaction represented a volume sale wherein the purchaser was actuated exclusively by a business motive as opposed to gratification of personal desire, this cannot be deemed a sale at retail within the general meaning of the phrase. As authority for the relevance of these criteria to the meaning of "retail", plaintiff cites Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383 (1946), as applied in the present statutory context in Gellman v. United States, 235 F.2d 87 (CA8, 1956), which was followed on virtually identical facts in Torti v. United States, 249 F.2d 623 (CA7, 1957). In construing the term "retail" in Roland Electrical Co. v. Walling, supra, the Supreme Court was concerned with deciding whether an electrical engineering company engaged in selling and servicing manufacturing equipment and machinery was a retail business establishment so as to be exempt from the operation of certain provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. In pursuing the issue the Court was seeking to ascertain whether, in light of the purpose of the legislation, Congress intended to include a business such as the one then under consideration within the exemption accorded retail establishments by the legislation. In deciding that Roland Electrical Company was not of a type as to be within the exempt category of retail establishments the Court applied the criteria put forth by the present plaintiff. It must be noted, however, that in applying these criteria the Court was seeking to determine the type of employer Congress wished to specifically exempt from the burdens of the Fair Labor Standards Act, in the context of the policies and requirements of the statute itself, rather than attempting to define the term "retail" as a word of general applicability. Consequently the criteria enumerated in Roland Electrical Co. can be relevant to the present proceeding only insofar as they comport with the legislative purpose underlying the particular statute presently before us. It is thus the legislative intention as manifest in the context and general purpose of the particular statute before us that must dictate construction of the phrase "sold at retail" as it appears in section 4001. See Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 93–94, 55 S.Ct. 50, 79 L.Ed. 211 (1934).

Consideration of the genesis of the present statute is somewhat enlightening in this context. The excise tax as imposed on jewelry under the Revenue Act of 1932, 47 Stat. 169 et seq., § 605, was imposed at the level of sale of jewelry by the manufacturer, producer, or importer. The tax continued as imposed at that level until the Revenue Act of 1941, 55 Stat. 687 et seq., § 552(a), placed the excise tax on jewelry at the level of retail sale. The major purpose of that act was to increase the national revenues to meet the radical increase in government expenditures for national defense in 1941. (House Report No. 1040, 77th Cong., 1st Sess., 1941–2 Cum.Bull. 413). The same House Report indicates that the alteration of the level of taxation on jewelry from manufacturer's to retailer's sale would net the Government annually $56,200,000 in additional revenue. Id. at 415. From this it may be inferred that the legislature did not intend any diminution of the base of the excise tax when it changed the level from manufacturer's to retailer's sale.

The jewelry here involved would clearly have been subject to tax at the time of manufacturer's sale under the statute as operative prior to the Act of 1941. Inasmuch as the objective of the 1941 change was to expand revenues from the tax imposed on the same commodity, jewelry, it would appear illogical to attribute to Congress an intention to exclude certain jewelry from the operation of the tax, merely from the change of the level at which the tax was imposed—i. e., merely from the change of the words "sold by the manufacturer, producer, or importer" to "sold at retail." Rather, it would seem more reasonable to infer that Congress intended the tax to operate on an identical subject—jewelry—but merely wished to change the particular point

in time of economic activity at which the tax would be imposed. The obvious conclusion dictated by this analysis is that the phrase "sold at retail" was intended to indicate *when* in the course of its marketing cycle jewelry would be taxed. The inference would appear that the intention of Congress in effecting the change was to impose the tax at the point of final sale in the marketing cycle—*i. e.*, when sold not for resale.

We do not believe that the three criteria set forth in Roland Electrical Co. v. United States, supra, are properly applicable to alter this conclusion. It will be recalled that the three criteria enumerated in Roland, (1) general size of each sale, (2) whether purchasers were ultimate consumers, and (3) whether purchasers were motivated by personal gratification as opposed to business purpose—were enumerated as guides to determine whether certain business establishments were retail firms within the context of a group which Congress intended to be exempt from certain requirements accruing under the Fair Labor Standards Act. The inquiry pursuant to which the criteria were enumerated was undertaken pursuant to this statutory objective.

The objective of section 4001 is not primarily directed to whether an item of jewelry is taxed because sold at retail. The tax levied by section 4001 is not one imposed upon retail sales. Rather, section 4001 imposes a tax upon jewelry, at the point in time when sold at retail. Clearly no jewelry otherwise subject to the tax was intended to escape taxation merely by being sold in a particular manner. It is conceded that the present jewelry was within the defined commodity subjected to tax by section 4001. Moreover, as an award pin it is difficult to conceive of this type of jewelry being "sold at retail" in any manner other than that in which this jewelry was sold—in volume to a business purchaser motivated by profit. Therefore, unless we are prepared to conclude either that Congress did not intend to subject award pins to taxation as jewelry under section 4001, or that the presentation of the award pin by the ultimate purchaser to its employee constituted a sale at retail, we must conclude that section 4001 was intended to impose a tax on a transaction of the type presently before us.

We find support for our conclusion as to the inapplicability to the present statute of the criteria enumerated in the Roland decision in definition of "retail business" in the structure of the statute itself. Section 4001 appears in Chapter 31 of the Internal Revenue Code of 1954, which is entitled RETAILERS EXCISE TAXES. In addition to jewelry, Chapter 31, in subchapters A through D, imposes similar taxes on furs, toilet preparations, luggage and handbags when each of these commodities is sold at retail. Subchapter F of this chapter contains special provisions applicable to the taxes imposed in all of the preceding subchapters. Section 4055, appearing in subchapter F, exempts from the taxes imposed by other subchapters all sales for the use of any state, territory, or political subdivision. Any sale to a state that would be subjected to tax under Chapter 31 but for section 4055 would most probably be in quantity, and presumably for a business motive rather than for personal gratification. Yet Congress provided a specific exemption from tax for such sales, despite the fact that they would not be taxed were the Roland criteria applicable. While the inclusion of the specific exemption of section 4055 is not conclusive evidence of Congressional intention, for similar exemption provisions are set out under other excise tax chapters in the code, it does present substantial indication that Congress did not anticipate that sales would perforce be removed from the category of "sold at retail" merely because made in volume to a purchaser motivated by business rather than personal considerations.

Plaintiff advises us that should we conclude that the sales presently involved are subject to taxation under section 4001 it would result in substantial inequity to retailers in competing with wholesalers for sales of award jewelry to industrial

establishments. This inequity would result because under Gellman, supra, and Torti, supra, these sales would escape taxation when made by vendors engaged primarily in selling at wholesale, while under the present decision identical sales would be subject to tax when made by retail sales companies. Nevertheless we cannot find the Gellman decision controlling. Only one small portion of one of the three types of sales before the court in Gellman concerned sales of jewelry to a business establishment for use as awards for employees. Even this very small portion of the sales there involved, the only portion relevant in the present case, was not in actual issue before the court inasmuch as the Government conceded it for the purposes of the litigation as incidental in amount to the total sales there involved. Torti is concerned with sales by a wholesaler to pocket merchants who in turn disposed of the merchandise. Thus while we might have reached a different conclusion on the Gellman and Torti facts had they been presented to us, those cases are not precisely analogous to the present proceeding.

Initially, we are inclined to the view that Congress intended "sold at retail" in section 4001 to comport more closely in definition to the concept "sold not for resale" than to the criteria enumerated in Roland Electrical Co. v. Walling, supra, and deem this position especially valid in the context of a sale by an acknowledged retailer. Laufman v. United States, D.C., 199 F.Supp. 353 (1961). The purchaser of these pins must be deemed the ultimate consumer, and the pins themselves most probably were not susceptible to sale at retail in any other manner.

■ For the reasons enumerated we conclude that the present sales were "at retail" within the meaning of section 4001, and properly subjected to tax pursuant to that section. The denial of plaintiff's claim for refund was therefore proper. Defendant's motion for summary judgment will be granted. Plaintiff's motion for summary judgment will be denied, and its petition will be dismissed.

It is so ordered.

DARR, Senior District Judge, sitting by designation, JONES, Chief Judge, and LARAMORE and WHITAKER, Judges, concur.